YATES, Judge.
Floyd L. Turner and Mildred L. Turner sued Dansby & Evans Insurance Company, Inc. (“Dansby & Evans”), Auto Owners Insurance Company (“Auto Owners”), and Harry H. Bates, alleging a breach of contract, fraudulent misrepresentation, and bad-faith refusal to pay. The Turners alleged that Dansby & Evans, Auto Owners, and Bates[1] had fraudulently induced them *328 into purchasing a homeowner’s insurance policy by misrepresenting that the policy would pay full replacement costs on the dwelling and its contents in the event of a loss. The dispute arises from lightning damage in July 1994 to the Turners’ central air conditioning unit, satellite system power unit, and a microwave oven.
On June 23, 1997, Dansby & Evans and Auto Owners both moved for a summary judgment. Following a hearing, the trial court granted both motions and entered a judgment. The court denied the Turners’ postjudgment motion. The Turners appeal the judgment only as to the breach-of-contract and misrepresentation claims. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1976.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the mov-ant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Additionally, in a breach-of-contract action, a summary judgment is appropriate only where the contract is unambiguous and the facts are undisputed. Graffeo v. State Farm Fire & Casualty, Inc., 628 So.2d 790 (Ala.Civ.App.1993). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
In 1965, the Turners purchased their homeowner’s insurance policy through Dansby & Evans. This policy was issued by an insurance company referred to as “Continental.” In April 1988, Dansby & Evans secured for the Turners’ a homeowner’s policy issued by Auto Owners, and that policy was renewed annually through April 1994. The Turners testified that no new policy was issued following this change.
Mrs. Turner stated that before the policy was renewed in April 1993, she contacted Dansby & Evans and spoke with Ginger Lucas about what coverage the policy provided. Mrs. Turner said that Lucas informed her that the policy provided “cost repair,” which, she said Lucas told her, “would repair and depreciate the value of items in the home.” Mrs. Turner testified that Lucas told her that for an additional $90, she could also have “cost-replacement coverage,” which, she says Lucas said, would replace what was insured. Mrs. Turner stated that she told Lucas she wanted the additional coverage and agreed to the increase in premium. She said that she received a new “declarations” page that indicated the premium increase and had the following notations: “Add: Replacement cost on contents. Add: Guar. Replacement on Dwelling.” Mrs. Turner stated that this was the only document she received after increasing the coverage under the policy.
In August 1993, the Turners purchased a new central air conditioning unit for their home. In July 1994, the Turners’ home suffered lightning damage — a covered loss under their policy. Three items were damaged: the microwave oven, the satellite system, and the air conditioning unit purchased in 1993.
Dansby & Evans and Auto Owners replaced the microwave oven and the satellite system, but they informed the Turners that the air conditioning unit would be *329 repaired, rather than replaced. Dansby & Evans and Auto Owners informed the Turners that there had been a “misunderstanding” about their coverage.
The record contains a “lightning affidavit,” submitted by a repairman. The affidavit states that the compressor and “start components” of the air conditioning unit were burned as a result of lightning and that the cost of repairs was estimated to be $1,337. Auto Owners sent the Turners a check, representing $1,337 for repair of the air conditioning unit, $427.95 for a new microwave oven, and $595.75 for repair of the satellite system. The Turners acknowledge receiving the check, but they say they never cashed it.
The Turners contend that they relied on the alleged misrepresentations of Lucas when they purchased the additional endorsement. To succeed on their claim of fraudulent misrepresentation, the Turners must prove: (1) that a misrepresentation of a material fact was made to them; (2) that the misrepresentation was made willfully to deceive or was made recklessly without knowledge; (3) that under the circumstances they justifiably relied upon the misrepresentation; and (4) that they were damaged as a proximate result of the rebanee. Sanford v. House of Discount Tires, 692 So.2d 840 (Ala.Civ.App.1997); Pitts v. Boody, 688 So.2d 832 (Ala.Civ.App.1996); Reeves Cedarhurst Development Corp. v. First American Federal Savings & Loan Ass’n, 607 So.2d 180 (Ala.1992).
Mr. Turner testified that his wife handled the insurance matters. He said he recalled receiving an initial policy, but stated that he had not looked at it. Mr. Turner also testified that when they received their premium notice in 1993, he and his wife discussed “whether they had replacement-cost insurance or whether they needed it” and then decided that Mrs. Turner would go to Dansby & Evans and inquire about replacement-cost insurance.
Mr. Turner stated that he had not spoken with anyone at Dansby & Evans or Auto Owners regarding replacement-cost coverage. He also stated that his wife had told him that Lucas had stated that replacement-cost insurance would replace rather than repair damaged items in their dwelling. Mr. Turner said that it was after lightning had damaged their air conditioning unit that they learned “there was no such thing as cost-replacement insurance.”
Lucas testified that it was Mrs. Turner who had initiated the inquiry about replacement-cost coverage. Lucas stated that she had told Mrs. Turner that the existing policy did not provide replacement-cost coverage on their dwelling and contents. Lucas stated that she then offered to compute the premium for adding such coverage. Lucas further stated that she had told Mrs. Turner that adding replacement-cost coverage would repair or replace damaged property, without a deduction for depreciation. Lucas further stated that she explained to Mrs. Turner that the replacement cost endorsement would either repair or replace what she had insured. Lucas testified:
“The guaranteed home replacement cost sáys that if you have a dwelling limit on your policy, say eighty thousand, you have a total loss of one hundred thousand, you know, and your dwelling is replaced or should be replaced at one hundred thousand, then the company will ... extend that coverage amount up to the one hundred. They’re just guaranteeing that they’re going to pay the actual — pay the actual replacement in the event of a total loss.
[[Image here]]
“The guaranteed replacement, we provide that extra coverage in the event she didn’t have enough on her policy at the time of her loss and the replacement on the house was more than the seventy-nine thousand then the guaranteed replacement just says that we would pay that difference.”
*330 Reviewing these facts in a light most favorable to the Turners, we conclude that there were genuine issues of material fact as to whether the Turners justifiably relied on the representations of Lucas. The Turners testified that they did not receive a new policy or an endorsement after adding the guaranteed-home-replacement coverage to their policy. The only document they received was a new declarations page noting the change in the premiums, which a fact-finder could determine they relied upon to their detriment.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and THOMPSON, J., concur.
MONROE and CRAWLEY, JJ„ concur in the result.

. The trial court granted Bates’s motion for a summary judgment; he is not a party to this appeal.